IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KELLY NICHOLS,[1] | § | |
| | § | No. 332, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. CN11-01936 |
| DEPARTMENT OF SERVICES FOR | § | 16-05-11TN |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES/DIVISION OF FAMILY | § | Petition Nos. 15-15104 |
| SERVICES (DSCYF/DFS), | § | 16-15113 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | | |
| RONALD SAMPSON, | § | |
| | § | No. 339, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. CN11-01936 |
| DEPARTMENT OF SERVICES FOR | § | 16-05-11TN |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES/DIVISION OF FAMILY | § | Petition Nos. 15-15104 |
| SERVICES (DSCYF/DFS), | § | 16-15113 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 11, 2018
Decided: April 25, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

---

[1] The Court previously assigned pseudonyms to the appellants under Supreme Court Rule 7(d).

## ORDER

This 25th day of April 2018, upon consideration of the parties' briefs and the record below,[2] it appears to the Court that:

(1)     The respondent-appellant, Kelly Nichols ("the Mother"), filed an appeal from the Family Court's decision, dated July 20, 2017, terminating her parental rights to her son ("the Son"), who was born in 2007, and her daughter ("the Daughter"), who was born in 2008 (collectively "the Children"). The respondent-appellant, Ronald Sampson ("the Father"), also filed an appeal from the Family Court's July 20, 2017 decision terminating his parental rights to the Children. Having carefully reviewed the record, we find no error or abuse of the discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

(2)     The Children first came into the care of DSCYF/DFS in March 2011. After the Mother and the Father completed their respective case plans, the Children were returned to them in August 2011. On May 29, 2015, DSCYF/DFS filed a petition for an emergency *ex parte* order granting custody of the Children to DSCYF/DFS. The petition was based on the Mother's substance abuse issues and domestic violence perpetrated by the Father against the Mother. The Family Court

---

[2] Because both appeals arise from the same Family Court order and involve similar questions of law and fact, we have consolidated them *sua sponte* for decision.

granted the petition, scheduled a preliminary protective hearing, and appointed a guardian *ad litem* to represent the best interests of the children.

(3) At the preliminary protective hearing on June 3, 2015, the Family Court appointed counsel to represent the Mother and the Father. The Mother stipulated to probable cause of dependency for the Children due to her lack of stable housing and substance abuse issues. At that time, the Father was subject to a criminal no contact order with the Mother and the Children. The Family Court found probable cause to believe the Children were dependent. The Family Court also found that there was currently no appropriate placement for the Children with relatives. The Mother was awarded supervised visitation with the Children, but the Father was not awarded visitation due to the no contact order.

(4) On July 14, 2015, the Family Court held an adjudicatory hearing. The Family Court found that the Children were dependent based on the parents' stipulations regarding a lack of appropriate housing. The Father was awarded supervised visitation because the criminal charges against him were dropped and the no contact order was lifted. The State advised that the Children were doing well in the home of a foster mother ("the Foster Mother"). The Family Court also found that DSCYF/DFS was making reasonable efforts at reunification.

(5) On August 11, 2015, the Family Court held a dispositional hearing. The Family Court continued to find the Children to be dependent and that DSCYF/DFS

was making reasonable efforts at reunification. Case plans were entered for the Mother and the Father.

(6) On November 17, 2015, the Family Court held a review hearing. The Family Court continued to find the Children to be dependent and that DSCYF/DFS was making reasonable efforts at reunification. The Mother and the Father were living together again, but their housing was unstable. They were making progress on their case plans. At the review hearing, it was noted that the Daughter, who has Down Syndrome, was receiving treatment for diabetes. Concerns were also expressed regarding the Daughter's sexualized behaviors. The Daughter was scheduled for an interview with the Child Advocacy Center.

(7) On March 11, 2016, the Family Court held a review hearing. The Family Court continued to find the Children to be dependent and that DSCYF/DFS was making reasonable efforts at reunification. DSCYF/DFS noted that the Daughter continued to act out sexually and was recently diagnosed with celiac disorder.

(8) On April 26, 2016, DSCYF/DFS filed a petition to change the goal from reunification to termination of parental rights. The guardian *ad litem* had no objection to the motion, but the Mother and the Father opposed the motion. On May 23, 2016, DSCYF/DFS filed a petition for termination and transfer of parents rights. The petition alleged that the parents' rights should be terminated under 13 *Del. C.* §

4

1103(a)(5) because they were not able or had failed to plan adequately for the Children's physical needs or mental health and development. The parties later stipulated that there would be concurrent goals of termination of parental rights/adoption and reunification. They also stipulated that the Child Advocacy Center interviews with the Children would be submitted to the Family Court.

(9) The Family Court held a permanency hearing on November 4, 2016. The Family Court interviewed the Son on December 6, 2016. The Family Court subsequently held that concurrent goals of termination of parental rights/adoption and reunification were appropriate. A termination of parental rights hearing was originally scheduled for January 24, 2017, January 27, 2017, and February 7, 2017, but was rescheduled for June 26, 2017 and June 27, 2017 due to the Family Court judge's medical leave.

(10) At the June 2017 hearing, the Family Court heard testimony from a psychologist who did psychological evaluations of the Mother and the Father, a therapist who did a caregiver assessment of the parents, a psychologist called on behalf of the parents, the Mother's family interventionist, a Children's Choice case worker, a DSCYF/DFS treatment worker and a DSCYF/DFS supervisor who had been involved in the 2011 case as a treatment worker, the Mother's Connections therapist, the Father's family interventionist, the Mother's Child, Inc. therapist, the Father's Child Inc. therapist, a friend of the parents, the Foster Mother, and a

DSCYF/DFS permanency/adoption worker. The Family Court also considered a substantiation of the Father for sexual abuse of the Daughter and a transcript of the substantiation hearing.[3]

(11) On July 20, 2017, the Family Court issued a decision terminating the parental rights of the Father and the Mother. The Family Court found by clear and convincing evidence that the Father and the Mother had failed to plan adequately for the Children's needs under 13 *Del. C.* § 1103(a)(5). Although the Father had completed the services required by his case plan, he had failed to adequately plan for the Children's needs based on his inappropriate behavior with the Children during visitation, his refusal to follow the Daughter's diabetes regimen, his sexual abuse of the Daughter, and his inappropriate behavior with professionals, including the professionals treating the Daughter's medical conditions. As to the Mother, the Family Court found that she had made significant progress on her case plan, but failed to adequately plan for the Children's needs because she denied that the Father had sexually abused the Daughter, was unable to do the calculations for the Daughter's diabetes regimen, was unable to protect the Daughter from sexual abuse by the Father, and was unable to protect the Son from the Father's overly aggressive behavior.

---

[3] This Court affirmed the substantiation order on appeal. *Sampson v. Dep't of Servs. for Children Youth and Their Families (DSCYF)*, 2017 WL 4857317 (Del. Oct. 25, 2017).

(12) The Family Court next found, by clear and convincing evidence, that DSYCF/DFS had made reasonable efforts to reunify the family. Finally, the Family Court considered the best interest factors under 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of parental rights was in the best interests of the Children.[4] The Family Court recognized that the Children's wishes (specifically the Son's expressed desire for reunification) weighed against termination of parental rights, but gave this factor less weight because there was testimony that most children express a desire for reunification. After weighing all of the § 722 factors, the Family Court found that termination was in the best interests of the Children. These appeals followed.

(13) On appeal, the Mother's appointed counsel filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1(c). The Mother's counsel asserts that she has reviewed the record and has determined that no arguable claim for appeal exists. By letter, the Mother's counsel informed her of the provisions of

---

[4] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

7

Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. The Mother provided points for the Court to consider on appeal. In her points, the Mother argues that she completed her case plan, she and the Father adequately planned for the Children's needs, DSYCF/DFS did not try to reunify the family, and the Father did not sexually abuse the Daughter. DSYCF/DFS filed a response to the Rule 26.1(c) brief and moved to affirm the Family Court's judgment. The guardian *ad litem* appointed to represent the interests of the Children filed a response, as requested by the Court, in support of affirmance of the Family Court's judgment.

(14) As to the Father's appeal, the Father's counsel filed an opening brief and the State filed an answering brief. The Father argues that DSYCF/DFS did not establish, by clear and convincing evidence, that termination of his parental rights was in the Children's best interests.

(15) On appeal, this Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[5] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[6] We review legal rulings *de novo*.[7] If the Family

---

[5] *Long v. Div. of Family Servs.*, 41 A.3d 367, 370 (Del. 2012).
[6] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[7] *Id.*

Court correctly applied the law, then our standard of review is abuse of discretion.[8] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[9]

(16) The statutory procedure for terminating parental rights requires two separate inquires.[10] First, the Family Court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] Second, the Family Court must determine whether termination of parental rights is in the best interest of the child.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(17) After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of, and for the reasons, stated in the Family Court's thorough and well-reasoned decision dated July 20, 2017. We find no error in the Family Court's application of the law to the facts. The Family Court found clear and convincing evidence that the Mother and the Father had failed to plan adequately for the Children's needs, that DSYCF/DFS had made reasonable reunification efforts, and

---

[8] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[11] 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[12] 13 *Del. C.* § 722(a).
[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

termination of the Mother's and the Father's parental rights was in the best interests of the Children.  Those conclusions are well-supported by the record.  Thus, we affirm.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice